M. J. GRANDE AND OTHERS v. AUGUSTIN CHAVES.

Where the intestate, residing in Nacogdoches, died there in 1846, and letters of administration were issued in that county, same year, on her estate, and, pending said administration, letters were, in 1847, also issued in Bexar, it was held that the administration in Bexar was void.

Where the testimonio of a power of attorney, executed in Mexico, to sell lands in this State, was sent by the constituents to the attorney through the hands of a witness who testified that the constituents acknowledged the document to be their full power of attorney for the purposes therein set forth, it was held that it was properly admitted in evidence, at least for the purpose of showing, in connection with letters written by the constituents, that the latter acquiesced in the sale made by the attorney under a void administration of their mother's estate.

Where an attorney of heirs, who has their power to sell, instead of selling directly by virtue of that power alone, with a view to the execution thereof, obtains letters of administration and sells under an order of Court, the sale will pass the title in equity, although the administration prove to have been null and void.

Appeal from Bexar. There was no allusion to his power of attorney from the heirs, by Flores, either in his petition for letters or in the proceedings for sale, or in the deed.

*Hewitt & Newton,* for appellants.

*I. A. & G. W. Paschal,* for appellee.

HEMPHILL, CH. J.    This is a suit to try the title to a lot in San Antonio, brought by the same plaintiffs who appealed, against Herrera and Montes, in No. 529.    (*Supra.*)    The facts are the same in both cases, with this distinction, that the lot sold to Herrera was a portion of the community of gains, between Juan Antonio Padilla and his wife, whereas the lot in this suit and which was sold to the defendant Chaves, was of the separate property.    In the suit against Herrera it was not necessary to decide on the validity of the grant of administration to Flores, so far as it embraced the estate of the wife, for the reason that the property being ganancial it was subject to the control of the administration on the estate of the husband, which was valid.    But the property sold to Chaves being of the wife's separate property, it becomes necessary, or at least proper, to express an opinion as to the validity of the grant, over the estate of the wife.    And it does seem that such grant was without legal force or effect.    An administration had been previously granted on such estate in the county of the residence of the deceased, and this was still subsisting at the date of the letters to Flores.    It appears that the actual administration by Noblitt was not extended beyond some personal effects in the county of Nacogdoches, but he had full powers of administration, which, by operation of law, were co-extensive with the estate to be administered.    The administration by Noblitt was opened in the county which had the preference in the grant ; but, admitting that the jurisdictions were concurrent, yet the grant from Nacogdoches would give superior right, that Court having first assumed jurisdiction.    The circumstance that the Nacogdoches administration did not at any time claim the land or attempt to reduce it into possession, might, however, be very properly considered by the jury as one among

other equities on which a purchaser under the second or Bexar administration might rely to support his title.

But the controlling circumstance in this case, and which over-reaches the question of the validity of the grant, or the sale made under its authority, is the fact that the plaintiffs, claiming this property by heirship, were exceedingly eager for the sale of the land, first empowering Chaves to expose it to sale, and, for his want of promptitude, revoking his authority and conferring it on Flores, recognizing the fact of his being administrator of their grand mother. Their letters to this effect would preclude them, in equity, from disturbing the rights of one who purchased from their agent who did the very act they requested and authorised him to perform, although he may have been also acting under another power which was invalid and insufficient to support his act. In connection with these letters there was a full power of attorney to sell, from the plaintiffs to Flores. This is not copied in this record, but was doubtless in evidence, being the subject of comment in the charge of the Court to the jury. It is transcribed in the Herrera case and is a testimonio, the protocol remaining in the office of the Judge before whom it was executed. The power is in the usual form of public instruments executed under the laws of Mexico, and in the form under which all such instruments were executed in this country previous to the Revolution in 1836. A witness testified that he had received it from the plaintiffs about the time of its date, and sent it to his brother, Pedro Flores. It was returned to him by his brother, for the purpose of taking it to Mexico and having it authenticated by the American consul, but as no consul resided nearer than Matamoros, witness returned it after four months, as it was ; recognized it to be the same document received by witness from the plaintiffs and at their request sent to Pedro Flores. Upon which proof the Court permitted the instrument to be read to the jury, except the attestation. At another place the witness testifies that the plaintiffs acknowledged

the document to be their full power for the purposes therein set forth.

The document on such evidence was properly admitted in evidence, at least for the purposes and to the extent with which such admission was qualified by the Court. The jury were instructed that the paper was not to be regarded by them as authority to sell by Flores, but that, in connection with the letters, it was entitled to such consideration as they might think proper to give it, for the purpose of showing that the plaintiffs consented to or acquiesced in the sale. This instrution was as favorable to the plaintiffs as the state of the facts would authorise. Flores did not make the sale until after the receipt of the letters and power of attorney, and his acts evince an intention to act under and with reference to such agency. The evidence shows that some monies were transmitted previous to the letters and power of attorney, probably from the sale in 1848, which is not now in question.

The administrator Flores, being called as a witness in the cause, testified that he received the power of attorney in 1849 from the plaintiffs ; that he forwarded to them a list of the property sold and the prices and the money ; that he did not hear from them nor did he ever hear of their being dissatisfied ; that they had often urged him to sell the lands ; that they sold for a good price ; that the Probate Court ordered him to pay seven hundred dollars to Francisco Flores ; that he paid it and sent the balance to his nieces, having kept it until he could find a safe conduct for it. If it be admitted that the testimony of an administrator, under such circumstances, might not be entitled to as much weight as if he had been wholly disinterested, even in feeling, yet this would only go to his credibility ; and the verdict of the jury shows that they had full confidence in his evidence, having found that the plaintiffs were informed of the sales and received the proceeds.

Upon the whole, we believe the plaintiffs are precluded by their acts from impeaching the title of the purchasers. They

entreated and urged the sale, and they have received the proceeds. Their acts show such acquiescence as to amount to a ratification, and they cannot be permitted to disturb the rights of purchasers under sales fairly made, and with their consent, and from which they have received the benefit. Or, if they have not received the proceeds, the Courts are open, and their agent, if he have no valid defence, can be made to account. The rights of the purchasers cannot be affected by any equities which may exist between the plaintiffs and the administrator The judgment is affirmed.

Judgment affirmed.